ZIMMERMAN REED LLP
Caleb Marker (SBN 269721)
 E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel (877) 500-8780; Fax (877) 500-8781

ZIMMERMAN REED LLP
Brian C. Gudmundson (*pro hac vice*)
 E-mail: brian.gudmundson@zimmreed.com
Michael J. Laird (*pro hac vice*)
 E-mail: michael.laird@zimmreed.com
Rachel K. Tack (*pro hac vice pending*)
 E-mail: rachel.tack@zimmreed.com
80 S 8th Street, Suite 1100
Minneapolis, MN 55402
Tel (612) 341-0400; Fax (612) 341-0844

*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLI EWEN, Individually, and as Personal Representative of the Estate of TODD EWEN, Deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>NATIONAL HOCKEY LEAGUE, NHL ENTERPRISES, LP., and NATIONAL HOCKEY LEAGUE BOARD OF GOVERNORS (COLLECTIVELY, "NHL"),<br><br>        Defendants | CASE NO.: 2:19-CV-03656 SB-GJS<br><br>*Assigned to the Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF'S MEMORANDUM AND POINTS OF AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO PERMIT JUDGE STANDISH TO RESOLVE ONGOING DISCOVERY DISPUTE**<br><br>Date of Hearing: February 12, 2021<br>Time of Hearing: 8:30 a.m.<br> Courtroom:      6C |

REDACTED PUBLIC VERSION

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................... 1

II.   BACKGROUND ............................................................... 2

  A.   Brief Factual Background .................................................. 2

  B.   Procedural Background .................................................... 3

III.  ARGUMENT .................................................................... 5

  A.   The NHL failed to demonstrate 'good cause' to amend the
       scheduling order ............................................................ 6

       i.    The NHL was not diligent in Obtaining Discovery Within
             the Guidelines Set by the Court ................................... 6

             1.   Plaintiff has consistently stated no texts between her and
                  Todd exist from September 19, 2015 .................................. 7

             2.   The NHL failed to identify new and pertinent information
                  learned after the discovery cutoff ....................................... 10

                  a.   The Declaration of Christopher Racich does not
                       support a court order requiring Plaintiff to produce
                       her cell phone ............................................. 10

                  b.   Plaintiff's Response to the NHL's Third Set of RFPs
                       was timely and the result of newly proposed search
                       terms ....................................................... 12

                  c.   The texts between Kelli Ewen and Steve Lowe
                       were produced as over-compliance with Rule 26 .... 13

                  d.   The testimony Kelli Ewen provided at her
                       deposition does not support reopening discovery ..... 14

                       i.    The NHL mischaracterized Ms. Ewen's
                             deposition testimony ....................................... 14

        *ii.      The NHL unnecessarily postponed Ms.*
                 *Ewen's deposition* ............................................ 15

    ii.    The NHL failed to identify any unforeseeable events in support of reopening discovery.................................................................... 16

    iii.    Extending Discovery will not result in relevant or admissible evidence and the NHL will not be prejudiced by the Court's Denial of this Motion ....................................................................... 17

    iv.    Plaintiff will be prejudiced if the NHL's Motion is granted................................................................................................ 18

    v.    Trial is imminent and Plaintiff Opposes the NHL's Motion................................................................................................ 19

    vi.    Granting the Motion will not promote judicial efficiency........................................................................................... 20

B.    The NHL failed to demonstrate excusable neglect .................................. 21

C.    The NHL failed to comply with this Court's Standing Civil Order ........ 22

IV.    CONCLUSION ................................................................................................ 22

PLAINTIFF'S MEMORANDUM IN OPPOSITION

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Henson v. Turn, Inc.*,
  2018 WL 5281629 (N.D. Cal Oct. 22, 2018) ...................................................... 16, 18, 19

*In re Outlaw Labs, LP Litigation*,
  2020 WL 2111920 .......................................................................................................... 21

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 609 ........................................................................................................... 6, 7, 15

*Lyon v. U.S. Immigr. & Customs,*
  *Enf't*, 308 F.R.D. 203 (N.D. Cal. 2015) ........................................................................... 6

*Morris v. Sutton*,
  2019 WL 2994291 (E.D. Cal. July 9, 2012) ................................................................... 19

*Pomona v. SQM N. Am. Corp.*,
  866 F.3d 1060 (9th Cir. 2017) ........................................................................................... 6

*Ramirez v. Zimmerman*,
  2019 WL 2106594 (S.D. Cal. May 14, 2019) ................................................................. 20

*Riley v. Ca.*,
  134 S. Ct. 2473 (2014) ............................................................................................... 16, 17

*Sheridan v. Reinke*,
  611 Fed.Appx. 381 (9th Cir. 2015) ........................................................................... 15, 17

*United States for use & benefit of Chen v. K.O.O. Constr., Inc.*,
  445 F. Supp. 3d 1055 (S.D. Cal. 2020) ....................................................................... 5, 6

Rules

Fed. R. Civ. P. 6(b) .................................................................................................... 21, 22

Fed. R. Civ. P. 16 ............................................................................................................... 6

Fed. R. Civ. P. 26 ................................................................................................. 2, 13, 20

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................. 20

Fed. R. Civ. P. 26(e) .......................................................................................................... 5

Fed. R. Civ. P. 26(e)(2) ............................................................................................... 5, 12

Fed. R. Civ. P. 16(b)(4) ..................................................................................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Kelli Ewen, individually and on behalf of the Estate of Todd Ewen ("Plaintiff") submits this Memorandum in Opposition to Defendants the National Hockey League, NHL Enterprises, LP, and the National Hockey League Board of Governors (collectively, "Defendants" or the "NHL") Motion for Leave to Permit Judge Standish to Resolve the Ongoing Discovery Dispute ("Motion").  (ECF No. 129).

The initial scheduling order in the matter contemplated six months of discovery. (ECF No. 39).  It has now lasted 17 months.  Plaintiff and her counsel have spent hundreds of hours and tens of thousands of dollars complying, over-complying, and satisfying every conceivable standard of discovery.  Unsatisfied, the NHL wishes to continue its onslaught well after discovery has closed, seeking information that has been proven over and over again to not exist.  Namely, supposed texts that were sent between Plaintiff and her late husband Todd Ewen on the day of his death.  These texts were proven to not exist through two forensic examinations of Mr. Ewen's phone (one each by both Plaintiff's and Defendant's expert) and full forensic examinations of both of Plaintiff's phones. Plaintiff herself fully testified that her communications with her husband that day could have been by text or by phone, and in fact the forensic record shows calls from Mrs. Ewen to her husband that day in the form of voicemails she left him.  More importantly, Plaintiff testified to the *content* of those communications in sworn testimony.  There is nothing here to compel and the NHL's abuse must end.

The NHL's Motion mischaracterizes the facts to justify its requests for relief, including that the Court: (1) reopen factual discovery after the cut-off date; (2) extend their opportunity to bring a motion to compel after discovery has closed; and (3) amend the scheduling order for the fifth time.  Neither the facts nor the procedural process of this case warrants the late, overly broad, and inappropriate request the NHL now makes.

The NHL seeks unrestricted access to Plaintiff's cell phone to perform a forensic analysis. This new request, made after discovery closed, seeks information beyond the

scope of Rule 26 of the Fed. R. of Civ. Pro. and undermines the discovery process, by which the NHL is required to adequately and specifically request information through narrowly tailored requests for production. (*See* Declaration of Brian C. Gudmundson "Gudmundson Decl." at ¶1, Ex. 1).

Factual discovery concluded on December 15, 2020 and the NHL must demonstrate both good cause and excusable neglect to prevail on its Motion. The NHL can show neither because any failure to obtain allegedly relevant evidence, to the extent it exists, is the NHL's own fault. With diligence and the pursuit of discovery, the NHL could have raised the issues present within its motion before the discovery deadline. Instead, it chose to wait to pursue certain discovery it claims is relevant until after the discovery deadline and delayed Plaintiff's deposition until the day before the close of factual discovery. Excusing the NHL from its neglectful discovery practice is unwarranted and, as such, the NHL's Motion should be denied.

In addition to being untimely, the NHL's requests are unlikely to result in relevant and admissible evidence because the text messages the NHL seeks do not exist and may have never existed. ██████████████████████████████ ████████████████████████████████████████ ████████████████████████████ (*See* Declaration of John Bair "Bair Declaration" ¶ 13(a)). Plaintiff has, at all times, gone above and beyond her discovery obligations at every turn, including producing every text extracted from Mr. Ewen's phone regardless of relevance.

The NHL's Motion is a fishing expedition bordering on harassment and the Court should deny the Motion.

## II.   BACKGROUND

### A.   Brief Factual Background

Plaintiff has brought claims against the NHL on behalf of Todd Ewen's estate and herself, asserting the NHL knew of the hazards inherent in its promotion of fighting and violence in the game of professional hockey and knew that the resultant repeated head

2

trauma would cause long term damage, like CTE, to its Enforcers, like Mr. Ewen.  To this day, the NHL denies that repeated head trauma poses any risk of permanent brain damage.

To maintain the theory that repeated head blows and CTE did not cause Mr. Ewen's death, the NHL is pursuing evidence, specifically text messages, from the date of Mr. Ewen's suicide.  Plaintiff has painstakingly and consistently represented that text messages between Todd and Kelli Ewen do not exist from the day of his suicide and Plaintiff has found no evidence that those texts ever existed.

It is well established that a party can only produce discovery to the extent it exists, yet the NHL continues to berate Plaintiff for these messages.  Plaintiff, through her forensic expert, Lighthouse Global Technologies ("Lighthouse") has conducted thorough searches on both Mr. and Ms. Ewen's cell phones and failed to find a single text message between the two on the day of Mr. Ewen's suicide.

**B.     Procedural Background**

The Motion before the Court is procedural in nature.  The NHL has asked the Court to reopen discovery to permit Judge Standish to hear discovery disputes between the parties, thereby reopening discovery and potentially impacting other deadlines within the Court's Scheduling Order.  In an effort to downplay the fact that the NHL's Motion is late and lacks good cause, it classified the motion as one to resolve an "ongoing" dispute raised before the end of discovery.  (ECF No. 129).  This is a mischaracterization.

The NHL requested Ms. Ewen's phone, and all data therein, on December 18, 2020, three days after discovery ended.[1]  The previous dispute, which is fully resolved, concerned texts and information on *Todd's* phone, not Kelli's.  (*See* Gudmundson Decl. at ¶1, Ex. 1).  As such, this is a new dispute that would require, should the court decide

---

[1] The NHL's Motion points to a letter from August 2020, in which the NHL referenced a forensic analysis of Plaintiff's phone, however, the issue was never followed-up on by the NHL and this was not part of the NHL's motion to compel.

3

to entertain the arguments, additional briefing and argument unrelated to the prior, resolved dispute.

The Court entered the first scheduling order in this case on August 12, 2019, which set the discovery cutoff for February 10, 2020. Since that scheduling order, the discovery cutoff has been extended four additional times. The most recent extension occurred on October 12, 2020, moving the discovery cutoff to December 15, 2020.

On November 6, 2020, approximately 30 days before the close of discovery, the NHL proposed entirely new ESI search terms and served a third set of requests for production of documents. The parties originally negotiated search terms pursuant to the agreed upon ESI protocol in December 2019, approximately one year earlier. The process of agreeing to search terms required substantial back and forth between the parties, spanning over several weeks. To that end, proposing search terms that late in discovery was unprecedented in this case and unnecessarily burdened Plaintiff who had to cram a search process that ordinarily takes several weeks, into less than a month.

Additionally, the NHL initially noticed the Deposition of Kelli Ewen, in July 2020 and well prior to the existing discovery deadline at that time. The NHL recognized and acknowledged that deposing Ms. Ewen was going to be necessary in this case. However, the NHL unilaterally postponed her deposition until December 14, 2020, one day before the close of factual discovery.[2]

Generally, the issues presented in this Motion stem from the NHL loading the majority of its discovery into the last month of the discovery period. Shifting blame, the NHL's Motion states it had to reschedule Plaintiff's deposition because of "eleventh-hour revelations and contradictions." (ECF No. 129, pg. 3). However, those supposedly "eleventh hour revelations" came from a timely December 7, 2020 document production that responded to requests for documents the NHL served in November. Further, those

---

[2] Other relevant dates, as they relate to the NHL's Motion to reopen discovery, are attached to the Gudmundson Decl. pursuant to the Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. (See Gudmundson Decl. ¶ 2, Ex. 2).

PLAINTIFF'S MEMORANDUM IN OPPOSITION

late requests sought the application additional ESI search terms the parties never agreed upon. (*See* Gudmundson Decl. ¶ 3, Ex. 3).  Plaintiff had substantial grounds to oppose this discovery but did not in an effort to over comply and cooperate with discovery.

The NHL's assertion of any error or misstep by Plaintiff in any prior production is belied by Plaintiff's overcompliance and rectification of any such error before the close of discovery.  Rule 26(e) requires a party to supplement or correct discovery if it learns that some material respect to the disclosure or response is incomplete or incorrect, or if the additional or corrective information has not otherwise been made known to the other parties during the discovery process.  Fed. R. Civ. P. 26(e)(2).  Plaintiff has complied with her supplementation and correcting requirements and all of this was completed well in advance of the discovery cut-off.  Thus, the NHL's attempt to blame Plaintiff for the delay pursuing certain discovery and completing Ms. Ewen's deposition is unavailing.

The NHL has been provided all the discovery to which it is entitled.  Plaintiff has produced thousands of responsive documents, including (1) every message between Plaintiff and Todd Ewen, (2) every message on Todd Ewen's phone, and (3) Mr. Ewen's iPhone in its entirety for the NHL to perform a forensic analysis.  The fact that those sources did not reveal texts that the NHL hopes, but does not know, exist now or ever existed does not entitle the NHL to continue its search after the discovery deadline. Prolonging the NHL's fishing expedition well beyond the discovery deadline will serve only to delay.

## III.   <u>ARGUMENT</u>

"The district court has wide discretion in controlling discovery."  *United States for use & benefit of Chen v. K.O.O. Constr., Inc.,* 445 F. Supp. 3d 1055, 1056 (S.D. Cal. 2020).  In employing the Federal Rules of Civil Procedure, courts and parties are required "to secure the just, speedy, and inexpensive determination of every action and proceeding."  *Id.*

The Court should deny the NHL's Motion for three reasons: (i) there is not "good cause"; (ii) the NHL has failed to demonstrate excusable neglect; and (iii) what the NHL

seeks does not exist.  Additionally, the Court should consider the NHL's non-compliance with the Standing Civil Order and deny this Motion outright.

### A. The NHL failed to demonstrate 'good cause' to amend the scheduling order.

Pursuant to Federal Rule 16(b)(4) of the Fed. R. of Civ. Pro. a scheduling order may only be modified for good cause and with the judge's consent. *Chen*, 445 F. Supp. 3d at 1056. The NHL's Motion does not demonstrate good cause and should be denied. When deciding whether there is good cause to amend a scheduling order, or in this case reopen discovery, courts weigh the following factors: (1) whether the moving party was diligent in obtaining discovery within the guidelines established by the court;  (2)  the foreseeability of the need for additional discovery in light of the time allowed for discovery by the court; (3) the likelihood that the discovery will lead to relevant evidence; (4) whether the non-moving party would be prejudiced (5) whether the request is opposed; and (6) whether trial is imminent. *See Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).  "Courts also consider whether allowing leave would align with the goal of Rule 15(d), which is to promote judicial efficiency. *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).

Here, these factors weigh against the NHL's Motion and the Court should hold that further discovery, even in a limited capacity, is unnecessary and unwarranted.

### i. The NHL was not Diligent in Obtaining Discovery within the Deadlines Set by the Court.

To show good cause, the NHL must provide specific, detailed, and non-conclusory reasons for granting the extension, including a showing of diligence in pursuing the litigation. (ECF No. 106). The NHL must also show that even with due diligence it could not have reasonably met the schedule deadlines. Fed. R. Civ. P. 16 advisory committee notes (1983 amendment).

Carelessness, or in this case unreasonable delay, is not compatible with a finding of diligence and offers no reason to reopen discovery. *Johnson v. Mammoth Recreations,*

*Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the party was not diligent, the inquiry should end, and the request should be denied. *Id*.

The NHL has failed to satisfy this demanding standard. Generally, the NHL's Motion alludes to "repeated contradictions as to the existence of relevant texts" and "new and pertinent information learned just before the close of discovery" to support its cause. (ECF No. 106) However, the NHL fails to detail any actual contradictions and to identify information it supposedly learned right before the close of discovery that would justify its request. Additionally, the NHL's Motion fails to identify reasonable efforts taken to surmount any discovery issues prior to the deadline's expiration.

### 1.   <u>Plaintiff has consistently stated no texts between her and Todd exist from September 19, 2015.</u>

Plaintiff has not made contradictory statements to the NHL regarding text messages between her and Todd Ewen on the date of Mr. Ewen's suicide. Rather, Plaintiff has consistently stated that no texts between her and Todd exist from the day of his death.

Plaintiff had both Todd Ewen and Kelli Ewen's cell phones forensically examined, including but not limited to targeted searches for September 19, 2015. Plaintiff's forensic expert's findings support Plaintiff's assertion that texts between Todd and Kelli do not exist on the day of his death.

Much of the evidence the NHL cites to supports that consistency. For instance, the NHL points to (1) a June 2020 letter from Plaintiff in which Plaintiff states that "no messages between Kelli and Todd were located on either phone on the date of Todd's death." (ECF No. 129)[3]; (2) Plaintiff's responses to Defendants' First Set of Requests for Production of Documents, to which Plaintiff asserted that she produced responsive

---

[3] The NHL also references a letter from Plaintiff's counsel, dated March 27, 2020, in which Plaintiff represented that she had "produced all responsive documents, text messages or otherwise" (ECF No. 129, Menitove Decl., Ex. 10, at 1). Again, this is consistent with the fact that texts between Kelli and Todd Ewen from September 19, 2015 do not exist, and thus, could not have been produced.

PLAINTIFF'S MEMORANDUM IN OPPOSITION

documents, including text messages; and (3) Plaintiff's deposition testimony, in which Kelli acknowledged it was possible her and Todd had argued over text, but she could not recall whether the conversation occurred via text, phone call or in person. (*See* Gudmundson Decl. ¶ 6, Ex. 6).

Regarding Plaintiff's response to Defendants' First Set of Requests for Production of Documents, Plaintiff objected to these requests, particularly to the extent any requests related to Kelli Ewen individually and withheld texts on that basis. (*See* ECF No. 129, Menitove Decl. ¶ 9, Ex. 9)[4].  Despite several meet and confers, during which Plaintiff stood on this objection, the NHL never moved to compel.

Instead, the NHL served a Second Set of Requests for Production on July 16, 2020, approximately 11 months after serving the first set.  Plaintiff's response to this set of requests included the production of thousands of text messages.

Several months later, the NHL filed a motion to compel requesting production of Todd Ewen's cell phone to its own forensic examiner, asserting Plaintiff "continued to deny the existence of any text messages between Plaintiff and Todd Ewen on the day of his suicide."  (ECF. No. 108)[5].   This is, again, consistent with Plaintiff's position regarding text messages from the day of Mr. Ewen's suicide.

During the December 2, 2020 hearing on the NHL's motion to compel, Plaintiff again maintained that text messages between Kelli and Todd Ewen from the day of Mr. Ewen's suicide do not exist. (*See* Gudmundson Decl., ¶ 8, Ex. 9 at 20:21) ("They don't exist.").  But, in an overabundance of caution and in recognition that the discovery deadline was approaching, Judge Standish granted the NHL's expert access to Mr. Ewen's phone for a forensic examination ("Vestigant Extraction"). (*Id*. at 22:24-5; 23:24 ("We are where we are and we are less than two weeks from that discovery cutoff.") Judge Standish articulated that the NHL's expert should have the opportunity to compare

---

[4] Plaintiff did not withhold texts between Kelli and Todd Ewen on any basis.
[5] The NHL's Motion to Compel did not include a demand for Plaintiff's phone. (*See* ECF. No. 108).

PLAINTIFF'S MEMORANDUM IN OPPOSITION

messages that Plaintiff produced to messages existing on the phone. (*Id*. at 5:3-15:26:13-14 ("do a comparison of what your forensic guys found just to see if something has been destroyed off the phone or left out;" "[w]hat they want doesn't exist and there's nothing they can do about it. They can't create evidence that isn't there.") To aid in this comparison, Plaintiff produced an excel spreadsheet, which included every text extracted from Mr. Ewen's phone and the phone itself to the NHL's expert.

Not surprisingly, in its own examination, the NHL's expert did not find any text messages between Kelli and Todd Ewen from September 19, 2015 and further failed to identify any messages Plaintiff should have produced and did not. Yet again, consistent with Plaintiff's position throughout this litigation and also, a complete resolution of any concerns raised within the NHL's Motion to Compel, which Plaintiff maintained all along were meritless.

The NHL also directs the Court to Plaintiff's deposition testimony and asserts that Plaintiff changed her position during her deposition regarding texts between her and Todd on the day of Todd's death. (*See* ECF. No. 129). That view grossly misrepresents Kelli's testimony. While Kelli acknowledged it was possible her and Todd had argued over text, she could not recall whether the conversation occurred via text, phone call or in person. (*See* Gudmundson Decl. ¶ 6, Ex. 6). At no point did she confirm the existence of any texts between them, but only speculated that, although she could not recall texting, it was possible they had texted. (*See Id*.)

In conjunction with claiming Plaintiff has made contradictory statements related to the existence of texts on September 19, 2015, the NHL also contends, without support, that Plaintiff made contradictory statements regarding her deletion of text messages prior to litigation commencing. (ECF No. 129). Plaintiff has maintained throughout this litigation that she periodically deleted text messages from her phone. (*See* Gudmundson Decl. ¶ 6, Ex. 6). Plaintiff confirmed this again during her deposition. (*Id*.) There is nothing contradictory about these representations.

PLAINTIFF'S MEMORANDUM IN OPPOSITION

In short, Plaintiff has maintained a consistent position regarding texts from September 19, 2015. If they ever existed, they do not exist anymore and two forensic examinations of Todd Ewen's phone by both Plaintiff's and Defendant's experts have confirmed this.[6] Without a showing of contradiction, the NHL has failed to demonstrate its own diligence and there is no cause to reopen discovery and further delay this case.

## 2. The NHL failed to identify new and pertinent information learned after the discovery cutoff.

The NHL has failed to identify new and pertinent information it claims to have learned just before the close of discovery. (ECF No. 129). Instead, the NHL points to: (1) statements within the Declaration of its *own* expert Christopher Racich ("Racich Declaration"), which include inaccuracies and unsupported conclusions (*See generally* Bair Decl.); (2) Plaintiff's Responses to the NHL's Third Set of Requests for Documents, which the NHL served on November 6, 2020 (five weeks before the close of discovery) and to which Plaintiff timely responded on December 7, 2020; (3) Plaintiff's production of a chat between Counselor Steve Lowe and Kelli Ewen after Todd Ewen's death; and (4) Plaintiff's testimony at her deposition on December 14, 2020. All of this information was available to the NHL prior to the end of discovery.

### a. The Declaration of Christopher Racich does not support a court order requiring Plaintiff to produce her cell phone for a second examination by the NHL

The Racich Declaration provides a limited view of one log of data within Mr. Ewen's iPhone. ██████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ As a practical matter, the absence of this evidence resolves the majority of the issues presented within the NHL's Motion.

---

[6] As discussed further below, Kelli Ewen's depo in fully consistent with her testimony about whether texts exist on the day Todd died. (*See* Gudmundson Decl. ¶ 6, Ex. 6).

PLAINTIFF'S MEMORANDUM IN OPPOSITION

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 ▓▓▓▓▓▓▓▓▓

3       For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10 ▓▓    In the instant case, this means that data in the *iPhoneRecentslog* is unreliable as it

11 relates to the conclusions within Mr. Racich's declaration and more importantly should

12 not be utilized as an accurate and complete picture of phone activity for September 19,

13 2015.

14       Additionally, Racich notes ▓▓▓▓▓▓▓▓▓▓▓

15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (ECF No. 129). ▓▓▓▓▓

16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ▓▓▓▓▓▓▓▓▓▓▓

19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23       Regardless, however, of the potential alteration of data, Plaintiff provided the

24 Cellebrite Report, containing every message extracted from Mr. Ewen's phone to the

25 NHL. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28 ▓▓    Therefore, the NHL has access to the same number of Chats, SMS and MMS

messages as Plaintiff and has had this access since before the close of discovery. Plaintiff's production of the Cellebrite Report to the NHL, absent any court order requiring this production, allowed the NHL to conduct a comparison of Plaintiff's previous productions of messages and the totality of messages available on the phone. This resolved any and all alleged issues raised in the NHL's previous motion to compel, and it is worth noting that the NHL has failed to point to any messages it claims Plaintiff should have produced but did not.   Despite the claims in this Motion, Plaintiff has produced more texts messages to the NHL than required by both Rule 26 and this Court.

In sum, ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████

b.   <u>Plaintiff's Response to the NHL's Third Set of RFPs was Timely and the Result of New Proposed Search Terms.</u>

Plaintiff's document production on December 7, 2020 was a timely response to document requests served upon her on November 6, 2020.  Generally, throughout this litigation, the parties have participated in a rolling document production and Plaintiff has complied with her duties pursuant to Fed. R. Civ. P. 26(e)(2).

The NHL's Motion does not identify additional and specific items, excluding texts from the day of Mr. Ewen's suicide, that Plaintiff has allegedly withheld in that production even though the NHL could have so identified based on their expert's evaluation of Todd Ewen's phone.  This is because any documents responsive to the NHL's requests have been produced, including documents related to new, and non-negotiated search terms provided by the NHL with barely a month left in discovery. (*See* Gudmundson Decl. at ¶3-5, Ex. 3-5).

Now, more than a month after the close of discovery, the NHL continues to seek additional documents, all of which, Plaintiff has maintained throughout this litigation, do

PLAINTIFF'S MEMORANDUM IN OPPOSITION

1  not exist.  The Court must deny this request and move this case beyond the discovery
2  period, which has continued for nearly a year and a half.

3          c.      The texts between Kelli Ewen and Steve Lowe were
4                  produced as over-compliance with Rule 26

5          The NHL claims that the chat between Steve Lowe and Kelli Ewen (the "Chat") is
6  responsive to Requests 9 and 37 of the NHL's August 2019 Requests as well as Request
7  Nos. 1, 2, and 4 of the July 16 Requests and should have been produced earlier in
8  litigation. (ECF No. 129).

9          The NHL also attempts to claim that Plaintiff's later decision to produce additional
10  texts from Todd's and Kelli's phones (because Plaintiff believed, incorrectly, as it turned
11  out, that the production would put this issue to bed) is somehow evidence of Plaintiff's
12  intent to withhold relevant texts.  That is not the case.

13          The Chat is nonresponsive and privileged, and Plaintiff objected to the NHL's
14  requests on those bases.  Todd had already passed away when the messages were sent –
15  they were not related to marriage counseling.   Texts between Kelli Ewen and her
16  counselor, a medical professional, after Mr. Ewen's death, are documents related to Kelli
17  Ewen and her individual grief.   Notwithstanding the nature of the Chat, the document hit
18  on a search term from the parties' ESI protocol and Plaintiff produced the Chat.

19          Plaintiff's production of those texts demonstrates her overcompliance with Rule
20  26 and exhaustive responsiveness to the NHL's requests.

21          Similarly, Plaintiff objected to the production of documents pertaining to Kelli
22  Ewen individually, which the NHL knew as of October 2019. (*See* Gudmundson Decl. ¶
23  6, Ex. 7).  At that time, the NHL agreed to this limitation.  Instead of timely raising this
24  issue with the Court through a motion to compel production related solely to Kelli Ewen,
25  the NHL filed this Motion, several weeks after discovery closed in an attempt to
26  retroactively dispute Plaintiff's objections to its first set of requests for documents and
27  apparently revoke its agreement that those documents were appropriately withheld (*Id.*).
28

Plaintiff's overcompliance with discovery certainly does not establish that Plaintiff wrongly withholding texts and should not be a basis for the Court to order more discovery and delay the case further. The Court should deny the Motion.

d.   The testimony Kelli Ewen provided at her deposition does not support reopening discovery

The Motion wrongfully claims the content of Ms. Ewen's deposition testimony was "new and pertinent" and therefore entitles it to reopen discovery and forensically examine Ms. Ewen's cell phone.   It does not and Ms. Ewen did not reveal anything in her deposition that would excuse the NHL's failure to pursue what it now seeks prior to the discovery deadline.

i.   The NHL mischaracterized Ms. Ewen's deposition testimony.

To demonstrate that it learned new and pertinent information during Ms. Ewen's deposition, the NHL quotes Ms. Ewen saying that she "possibly" texted with Mr. Ewen on the day of his suicide. (ECF No. 129).  More accurately stated, Ms. Ewen does not recall whether the conversation she had with Mr. Ewen on the day of his suicide occurred through text messages. (*See* Gudmundson Decl.  ¶ 5, Ex.6)(Dep. of Kelli Ewen, at 220: 11-13 ("I don't know if it was a text message or if it was a conversation.  I don't remember."); 220: 16-19 ("I just don't remember, because I had just talked to him earlier, and I don't remember if it was a text message or if we had a conversation.") 221:23-24 ("I wish I could tell you.  I just don't remember.").

Plaintiff has maintained throughout this litigation that Ms. Ewen cannot recall the specifics, excluding content, of the conversation she had with Mr. Ewen the day he died. (*See* ECF No. 129, Menitove Decl. Ex. 11)(Plaintiff's "**recollection** is that the argument identified in the police report occurred in person the morning of Todd's death.").

The idea that Kelli and Todd Ewen "possibly" texted on September 19, 2015 is not new information, and as the NHL highlights, other testimony suggested that texts possible occurred.  That "possibility" has not played out.  Instead, to determine whether text

14

between Todd and Kelli exists, the parties agreed to an ESI protocol and both Todd and Kelli Ewen's cell phone were forensically searched for responsive text messages. Through that process, the parties learned that no text messages between Todd And Kelli Ewen existed on September 19, 2015.

None of the information in Ms. Ewen's deposition was new and fails to support good cause to reopen discovery.

ii.     *The NHL unnecessarily postponed Ms. Ewen's deposition.*

The NHL's failure to diligently pursue discovery is demonstrated in the record and supports the refusal to reopen discovery. *See Sheridan v. Reinke*, 611 Fed,Appx.381, 384 (9th Cir. 2015).  (citing *Johnson,* 975 at 608-09)("good cause" inquiry focuses primarily on diligence of requesting party)(citations omitted)).

On more than one occasion, the NHL postponed Plaintiff's deposition and in doing so, broadly asserted that Plaintiff had not produced the documents the NHL needed to depose Ms. Ewen. (ECF No. 129).  To move discovery, Plaintiff's counsel offered to allow the NHL to start Ms. Ewen's deposition and continue the deposition to another day should the NHL determine it needs more time to inquire about documents produced at a later date. (*See* Gudmundson Decl. ¶7, Ex. 8).  The NHL refused, and instead chose to schedule Ms. Ewen's deposition for December 14, 2020, one day before discovery closed. (*Id.*)

Of note from Ms. Ewen's Deposition, the NHL spent the majority of the day questioning her on documents the NHL had in its possession since 2019 and early 2020, including the medical examiner's report and the "To a new Start" document that was referenced in the NHL's Second Set of Requests for Production of Documents served in July 2020. (*See* Gudmundson Decl. ¶ 5).  The NHL's assertion that is lacked the documents necessary to conduct Ms. Ewen's deposition until December 14, 2020 fails when compared to the documents Ms. Ewen was questioned on during her deposition.

1    Instead, the NHL could have conducted a similar deposition in July 2020, when it was

2    originally noticed.

3        Diligence would have required the NHL to complete Plaintiff's deposition well in

4    advance of the discovery cut-off to allow for additional discovery or the resolution of any

5    disputes prior to the deadline.

6        **ii.    The NHL failed to identify the occurrence of any unforeseeable**

7             **events in support of reopening discovery**

8        The NHL argued it could not foresee the need for additional discovery regarding

9    text messages between Plaintiff and Todd Ewen until its forensic expert determined that

10   data had been lost from Mr. Ewen's phone. (ECF No. 129).

11   ███████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████

13   █

14   ███████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   ██████████████████████████████████████████████  Therefore,

18   the supposed missing data on Todd's phone does not support the NHL's pursuit of Kelli

19   Ewen's phone.

20   ███████████████████████████████████████████████████████

21   ███████████████████████████████████████████████████████

22   █████████████████████████████████████████

23       Indeed, Defendants knew well in advance of bringing this motion that Plaintiff

24   would not agree to produce Plaintiffs' phone, either physical or the extraction because it

25   is highly burdensome, disruptive, and needless invasion of Plaintiff's privacy.  (*See*

26   *Henson v. Turn, Inc.*, 2018 WL 5281629 at *6 (N.D. Cal Oct. 22, 2018) (*citing Riley v.*

27   *Ca.*, 134 S. Ct. 2473, 2494-95 (2014) (Holding that "modern cell phones are not just

28   another technological convenience.  With all they contain and all they may reveal, they

hold for many Americans the privacies of life.")).  Also, thorough examination of two of Plaintiff's phones was already completed.

Requesting her phone and all data included on that phone is overly broad and invasive, not proportional to the needs of this case, and unlikely to result in admissible, or even responsive, evidence because all responsive texts have been provided.

The NHL was also on notice prior to the close of discovery that it needed to bring any request for an extension before this Court. (*See* Gudmundson Decl. Ex. 9 at 25:20-4) ("I'm not going to order that your vendor produce what they have at this point.  And you'll probably have to get an extension from Judge Blumenfeld.")  Further, the NHL was also on notice that any request for an extension must be filed before the expiration of the deadline it sought to extend. (*See* Standing Civil Order; ECF No. 9; ECF No. 22; ECF No. 39).

Nothing in the NHL's Motion demonstrates unforeseeable events.  Rather, Plaintiff's position and her production have been consistently explained and the data found on Mr. Ewen's phone supports her position.  This factor does not support good cause to reopen discovery.

### iii.    Extending Discovery Will Not Result in Relevant or Admissible Evidence and The NHL Will Not be Prejudiced by the Court's Denial of this Motion.

The burden is on the NHL to justify extending discovery. *See Sheridan v. Reinke*, 611 Fed.Appx. 381, 385 (9th Cir. 2015).  The NHL has failed to demonstrate that reopening discovery for this dispute will result in the extraction of additional text messages or provide any information of value.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  Defendants' own expert found no text messages between Mr. and Mrs. Ewen on that day.  Therefore,

extending discovery and allowing the NHL unrestricted access to Plaintiff's cell phone is unsupported by the alleged concerns and unlikely to result in relevant evidence.

This factor does not support good cause to reopen discovery.

### iv.   **Plaintiff will be Prejudiced if the NHL's Motion is Granted.**

Plaintiff will be severely prejudiced by any extension because it would unjustifiably prolong the discovery period and poses a significant burden on her and her business.

In the last three months, the NHL has sought non-existent text messages from Plaintiff through a motion to compel, this motion, and a proposed motion to compel. Through these efforts, the NHL had its own expert examine Mr. Ewen's phone and subsequently found no evidence that Plaintiff had withheld any responsive messages from Mr. Ewen's phone. Upset that it did not find the texts it hoped for, the NHL continues to harass Ms. Ewen, now demanding to search her phone, in hopes that those texts exist even though neither Plaintiff nor the NHL have any evidence that they do.

With respect to relevance, the NHL's request to directly inspect Plaintiff's phone and for complete forensic images of the device threatens to sweep documents and information that are not relevant to the issues in this case, such as Plaintiff's private text messages, emails, contact lists, and photographs.  *See Turn*, 2018 WL 5281629 at *5.

The request is also likely to result in private information for third parties and an inability to work, as Plaintiff relies upon her phone to conduct her real estate business. Any deprivation of her phone must be due to some compelling need, and the NHL has not shown it.  Her phone has been thoroughly forensically examined and two full forensic examinations of Todd Ewen's phone have yielded no evidence that the text messages the NHL seeks are there.

Additionally, the NHL's request for Plaintiff's phone is disproportional to the needs of this case. *See Id*. (Privacy interests can be considered in evaluating proportionality, particularly in the context of a request to inspect personal devices.) The parties agreed to an ESI protocol for the production of information from Plaintiff and Mr.

Ewen's devices. The NHL has issued three sets of requests for production of documents, along with other discovery requests, and does not dispute that Plaintiff has produced responsive documents to these requests, including thousands of text messages. Given this, and in light of the fact that Plaintiff's contain information not relevant to this case, may contain privileged information, and implicate significant privacy concerns, the NHL's request for Plaintiff's phone is not relevant or proportional to the needs of this case, is substantially burdensome, and is an unnecessary attack on Plaintiff's privacy. *See Id*.

Furthermore, reopening discovery for this dispute will likely impact expert discovery and dispositive motion deadlines, further prejudicing plaintiff. "Delaying proceedings can constitute prejudice to the non-moving party." *See Morris v. Sutton*, 2019 WL 2994291 at *5 (E.D. Cal. July 9, 2012)("Delaying proceedings can constitute prejudice to the non-moving party."). The same is true for reopening discovery when it requires additional costs and major alterations in trial tactics and strategy. *Id*.

Here, Plaintiff, who has already spent hundreds of hours of time and tens of thousands of dollars satisfying the NHL's document requests, including through a highly qualified and well-reputed forensic expert, would be required to have her expert submit additional production and provide a rebuttal report in this matter. These are unnecessary expenses, thereby prejudicing Plaintiff.

This factor weighs in favor of denying the NHL's Motion.

### v.   Trial is imminent and Plaintiff opposes the NHL's Motion.

While trial is not scheduled until July 19, 2021, it is unreasonable to assume that the NHL's request for an extension to permit Judge Standish to hear this dispute will not require modification to other deadlines in the scheduling order. Presumably, if the Court grants the NHL's Motion, the parties will still need to submit this dispute to Judge Standish, which could require a briefing schedule and an oral argument.

Should Judge Standish grant the NHL's proposed motion to compel, there would likely be additional expert discovery and depositions. The expert discovery deadline, currently set for February 26, 2021, would need to be extended. From there, other

PLAINTIFF'S MEMORANDUM IN OPPOSITION

deadlines would likely need to be moved. The NHL has represented this motion as one without impact to the case's overall schedule, but much like the rest of the NHL's Motion, this is misleading.

Granting this motion, which Plaintiff zealously opposes, has a strong likelihood of requiring an extension of other deadlines, particularly expert rebuttal reports, expert discovery and dispositive motions, as those dates are imminent.

This factor weighs in favor of denying the NHL's Motion.

### vi.    Granting the NHL's Motion will not Promote Judicial Efficiency.

The Court is must limit the frequency or extent of discovery if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Fed. R. Civ. P. 26(b)(2)(C).  Amendments to Rule 26 emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality. *Ramirez v. Zimmerman*, 2019 WL 2106594 at * 2 (S.D. Cal. May 14, 2019).

Here, the Court should find that the NHL had ample opportunity to obtain the information it seeks in its proposed motion to compel.  Discovery in this case began in August 2019, approximately. (ECF No. 39). Considering the December 15, 2020 discovery cut-off date, the NHL had almost 16 months to complete its discovery.  This is more than enough time to complete the necessary discovery, particularly when considering that a large amount of discovery was completed in the multi-district litigation, prior to this case. (ECF No. 33); *See Ramirez*, 2019 WL 2106594 at *3 (holding that a year of fact discovery constitutes an ample opportunity to obtain information.)

"Where a party has had ample time to obtain information, to continue the pursuit of discovery the party generally must demonstrate to the court why the additional discovery is necessary and/or why it was not previously obtainable." *Id*. at 3.  Here, the NHL has failed to demonstrate the basis for its failure to obtain discovery, to the extent it exists, prior to several weeks after the discovery cut-off.

This factor weighs in favor of denying the NHL's Motion.

Considering the factors outlined in *Pomona*, the overwhelming conclusion is that the NHL has failed to demonstrate good cause to reopen discovery.  Without good cause, the Court should be compelled to deny the NHL's Motion.

## B.    The NHL Failed to Demonstrate Excusable Neglect.

When a motion to extend time is made after time has expired, like it is here, "the court may, for good cause, extend the time … if the party failed to act because of excusable neglect.  *See* Fed. R. Civ. P. 6(b).

In addition to failing to establish the *Pomana* factors, the NHL has not shown its failure to obtain the information it now seeks during the discovery period constitutes excusable neglect.  The determination of excusable neglect considers (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether the party acted in good faith.  *In re Outlaw Labs, LP Litigation*, 2020 WL 2111920 at *2.

Prior to this motion, the cut-off for fact discovery was extended five times and discovery finally closed on December 15, 2020.  The NHL filed this motion to reopen factual discovery on January 6, 2021.  Despite both the NHL's late filing and the requirements of Rule 6(b), the NHL failed to offer any examples of excusable neglect that would support an extension of time to reopen discovery.

For Example, the NHL failed to examine the reasons for delaying Kelli Ewen's deposition until the day before the close of discovery and now, claims that testimony requires additional time to explore.  Had the NHL taken Ms. Ewen's deposition in July, when it was originally noticed, it would have been able to remedy any alleged discovery issues in advance of the discovery deadline. This is especially important when considering Plaintiff offered the NHL the opportunity to continue Ms. Ewen's deposition if supplemental evidence was produced that the NHL wanted to question her on later. (*See* Gudmundson Decl. at ¶ 7, Ex. 8).  There was no reasonable excuse to delay taking

Ms. Ewen's deposition, as it was reasonably foreseeable her testimony may elicit follow-up discovery requests.

Therefore, it was reasonably within the NHL's control to prevent the need for this late request for an extension and it cannot show excusable neglect.

**C.    The NHL failed to comply with this Court's Standing Civil Order**

In addition to a showing of good cause and compliance with Rule 6(b), the NHL's motion is also governed by this Court's Standing Civil Order "Extensions of Time" section which grants extensions <u>only when the request is made before the due date</u> and sets forth the following:

 (a) The existing and requested (i) due date or hearing date, (ii) the discovery cut-off date, (iii) the last day for hearing motions, (iv) the pretrial conference date, and (v) the trial date (in a two-column table with the existing dates in the first column and the requested date(s) in the second column);

 (b) a declaration supporting good cause for granting an extension or continuance;

 (c) a list of prior extensions granted or denied by the Court; and

 (d) a description of diligence of the party seeking the continuance and any prejudice that may result if the continuance is denied.

Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr.

Defendants' Motion fails to include the required table and a declaration supporting good cause. (ECF No. 129). Pursuant to the Court's Standing Order, Defendants' failure to comply with the "Extensions of Time" provision must result in rejection of the request. Id.

**IV.    CONCLUSION**

For these reasons, the Court need not reopen discovery disputes in this matter and should deny the NHL's Motion in its entirety.

ZIMMERMAN REED LLP

Date: January 22, 2021

*/s/ Brian C. Gudmundson*

Brian C. Gudmundson (*pro hac vice*)
Michael J. Laird (*pro hac vice*)
Rachel K. Tack (*pro hac vice pending*)
80 S 8th Street, Suite 1100
Minneapolis, MN 55402
(612) 341-0400 Telephone
(612) 341-0844 Facsimile

ZIMMERMAN REED LLP
Christopher P. Ridout
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

CORBOY & DEMETRIO, P.C.
William T. Gibbs (*pro hac vice*)
33 N. Dearborn, Suite 2100
Chicago, IL 60602
(312) 346-3191 Telephone
(312) 346-5562 Facsimile

O'MARA LAW GROUP
Mark M. O'Mara (*pro hac vice*)
221 NE Ivanhoe Blvd., Suite 200
Orlando, FL 32804
(407) 898-5151 Telephone
(407) 898-2468 Facsimile

*Attorneys for Plaintiffs*

PLAINTIFF'S MEMORANDUM IN OPPOSITION